IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-00866-PAB-KAS

RICKY LEE HUDSON, JR.,

Plaintiff,

v.

HAYDEN VIGUERIA, Deputy 22-48,

Defendant.

---

**ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendant Hayden Vigueria's **Motion to Dismiss** [#37],[1] Defendant's **Motion to Stay** [#39], and the Court's **Order to Show Cause** [#45], issued on July 26, 2026. Plaintiff, who proceeds as a pro se litigant,[2] filed a **Motion to Show Cause** [#46], which appears to be an untimely response to the Order to Show Cause [#45]. Plaintiff has otherwise not filed a response to either of the pending Motions.

For the following reasons, the Court **RECOMMENDS** that the Motion to Dismiss [#37] be **GRANTED**. In the alternative, the Court **RECOMMENDS** that this case be

---

[1] "[#37]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

dismissed pursuant to Fed. R. Civ. P. 41(b) due to Plaintiff's failure to comply with court orders. The Court **ORDERS** that its Order to Show Cause [#45] is **MADE ABSOLUTE**. The Court further **ORDERS** that the Motion to Stay [#39] is **DENIED as moot**.

## I. Background

Although the Second Amended Prisoner Complaint [#14] (the "Complaint") contains several allegations against multiple defendants, only the claims against Defendant Vigueria in his personal capacity remain. *See Order* [#26]. The claims arise from incidents that occurred at the Weld County Jail while Plaintiff was a pretrial detainee. *Second Am. Compl.* [#14] at 4-6. Under Claim One, Plaintiff alleges that on August 28, 2024, he was taking a shower when Defendant attempted to serve him with a disciplinary report. *Id*. at 4[3]. Plaintiff further alleges that Defendant "exposed [Plaintiff's] nude body to the individuals whom [sic] have the ability to review the mandated Deputy worn body cameras." *Id*. Plaintiff further alleges that Defendant made sexually explicit comments about his penis and that he also groaned in a sexual manner when in the shower area with Plaintiff. *Id*. When Plaintiff told Defendant his behavior was inappropriate, Defendant closed the shower stall doors but remained at the entrance of the shower area until another deputy spoke with him. *Id*. at 5.

Under Claim Three, Plaintiff alleges that on October 21, 2024, Defendant accused Plaintiff of "diversion of pills" and that this accusation occurred after Defendant had responded to a Step 1 grievance about his August 2024 conduct in the shower, which Plaintiff filed pursuant to the prison's Prison Rape Elimination Act procedures. *Id*. at 6.

---

[3] Citations to the Complaint's page numbers refer to the numbering stamped at the top of each page by the Court's docketing system.

Plaintiff asserts these claims under the Fourth, Eighth, and Fourteenth Amendments, and he seeks monetary relief and "relief in [his] criminal matters due to [the] retaliation [he has] endured[.]" *Id*. at 4, 8.

**A. Allegations in Operative Complaint Versus Allegations in Previous Complaint and a Magistrate Judge's Directives to Plaintiff**

These allegations are nearly identical to those addressed in a magistrate judge's prior order in this case, which led to the filing of this operative complaint. *See Order Directing Plaintiff to File Second Amended Complaint* [#12]. In that order, in connection with the shower incident, the magistrate judge informed Pliantiff that "[m]ere verbal threats or harassment do not rise to the level of a constitutional violation unless they create 'terror of instant and unexpected death.'" *Order* [#12] at 3 (quoting *Alvarez v. Gonzales*, 155 F. App'x 393, 396 (10th Cir. 2005) (unpublished) (additional citations omitted)). The magistrate judge directed Plaintiff to "allege any additional facts which support his claim." *Id*. at 5. In connection with the "diversion of pills" accusation, the magistrate judge informed Plaintiff that his allegations that Defendant retaliated against him were vague and conclusory and did not include specific facts showing retaliation. *Id*. at 5-6. The magistrate judge directed Plaintiff to "allege specific facts to meet the elements of an unconstitutional retaliation claim[.]" *Id*. at 5. Ultimately, the magistrate judge ordered Plaintiff to file a second amended complaint, hence the operative Second Amended Complaint. *See id*. at 9. The Second Amended Complaint's allegations against Defendant regarding the shower stall incident are, in relevant part, the same. *Compare First Am. Compl.* [#11] at 4-6 *with Second Am. Compl.* [#14] at 4-5. The allegations regarding

Defendant's retaliation against Plaintiff are very similar. *Compare First Am. Compl.* [#11] at 6 *with Second Am. Compl.* [#14] at 6.[4]

### B. Defendant's Motion to Dismiss and Plaintiff's Failures to Respond

Defendant now seeks dismissal on qualified immunity grounds and for failure to state a claim. *See Motion to Dismiss* [#37] at 3-6. Plaintiff failed to timely respond to the Motion to Dismiss. In an abundance of caution, and because several documents mailed by the Court to Plaintiff had been returned as undeliverable, the Court directed the Clerk of Court to update Plaintiff's address to match a Notice of Change of Address [#23] and directed Defendant to resend the Motion to Dismiss [#37] to Plaintiff. *See Minute Order* [#41]. The Court also set a new deadline for Plaintiff to respond to the Motion to Dismiss [#37]. *Id*.

After Defendant's mailing containing the Motion to Dismiss [#37] was returned as undeliverable, the Court sua sponte extended Plaintiff's deadline to respond to the Motion to Dismiss [#37] to April 23, 2026. *See Minute Order* [#44]. After Plaintiff also failed to meet that deadline, on July 26, 2026, the Court entered an Order to Show Cause [#45], ordering Plaintiff to show cause why the Court should not recommend that his case be dismissed under Fed. R. Civ. P. 41(b) for failure to prosecute and for failure to comply with the Court's Minute Order [#44] directing him to respond to the Motion to Dismiss [#37] and the Motion to Stay [#39]. The Court set a deadline of August 14, 2026, and warned Plaintiff that his "failure to comply . . . will result in the Court issuing a

[4] After additional screening by a magistrate judge, Plaintiff's two remaining claims were drawn to the District Judge and the undersigned for further adjudication. *See Recommendation* [#19]; *Order* [#26] (adopting Recommendation and drawing case to a presiding judge); *Text Entry Order* [#27] (reassigning judicial officers).

recommendation . . . to dismiss this lawsuit for failure to prosecute." *Order to Show Cause* [#45] at 2.

On August 24, 2026, the Court received Plaintiff's "Motion to Show Cause" [#46] ("Plaintiff's Motion"). Plaintiff's Motion was placed in the prison mail on August 17, 2026. *See Pl.'s Motion* [#46] at 3. Because Plaintiff is incarcerated, he may avail himself of the prison mailbox rule, which means that the filing date is the date on which Plaintiff placed the filing in the prison mail. *Cf. Johnson v. Reyna*, No. 20-cv-00459-PAB-MEH, 2024 WL 4504558, at *1 (D. Colo. Oct. 16, 2024) (explaining that a prisoner's filing is timely submitted "if given to prison officials before the filing deadline, regardless of when the [c]ourt receives that document"). Though Plaintiff's Motion does not expressly identify the Court's Order to Show Cause [#45], the Court will liberally construe it as a response to that show cause order.

Plaintiff asks for the Court's mercy. *Pl.'s Motion* [#46] at 1. He represents that he did not receive the Motion to Dismiss [#37] or the Motion to Stay [#39]. *Id*. He further states that he has been grieving his father's death, he was on a writ from Buena Vista County Jail to the Weld County Jail for a retrial from early April to early May, and he has had trouble accessing the prison library at Buena Vista Correctional Facility due to a lockdown. *Id*. He asks the Court to resend him the Motion to Dismiss [#37] and the Motion to Stay [#39], and he asks the Court to set a new deadline to respond to these Motions.[5]

[5] Plaintiff also asks the Court to address his Motion for Appointment of Counsel [#13]; however, the Court denied that Motion as premature on August 7, 2025. *See Minute Order* [#16]. The Court's mailing was returned as undeliverable on August 19, 2025, apparently because it was addressed to Weld County Jail, where Plaintiff was originally held. *See Returned Mail* [#20]; *see also Compl.* [#1] at 2 (listing Plaintiff's address as the Weld County Jail's).

This is Plaintiff's first filing in this matter since he filed his Notice of Change of Address [#23] on August 28, 2025.

## II. Legal Standards

### A. Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017).

### B. Qualified Immunity

The doctrine of qualified immunity "shields government officials performing discretionary functions from liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). However, the defense of qualified immunity "is available only to individual government officials, not governmental entities." *Rome v.*

*Romero*, 225 F.R.D. 640, 643 (D. Colo. 2004) (citing *Owen v. City of Independence*, 445 U.S. 622 (1980)). To overcome an assertion of qualified immunity, the plaintiff must show that "(1) the [defendant's] alleged conduct violated a constitutional right, and (2) it was clearly established at the time of the violation, such that 'every reasonable official would have understood,' that such conduct constituted a violation of that right." *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). The Court may examine the two prongs in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## III. Analysis

### A. Motion to Dismiss

#### 1. Whether Good Cause or Excusable Neglect Justifies Allowing Plaintiff Additional Time to Respond

At the outset, the Court addresses whether it may adjudicate the Motion to Dismiss [#37] without a response brief from Plaintiff. For reasons discussed below, the Court concludes that it may do so because Plaintiff has failed to establish good cause or excusable neglect and has otherwise failed to demonstrate diligence.

Fed. R. Civ. P. 6(b)(1)(B) allows the court to, for good cause, extend a deadline "on motion made after the time has expired if the party failed to act because of excusable neglect." "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 392 (1993). Courts consider the following four factors: "the danger of prejudice to [the nonmoving party], the length of the delay and its

potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *City of Chanute, Kan. v. Williams Nat. Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994) (adopting the four-factor test set forth in *Pioneer Inv. Servs.*) (alteration in original). The determination whether neglect is "excusable" "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co.*, 507 U.S. at 395.

In this Circuit, "good cause" requires a greater showing than "excusable neglect." *Cf. Utah Republican Party v. Herbert*, 678 F. App'x 697, 700 (10th Cir. 2017) (citing *In re Kirkland*, 86 F.3d 172, 175 (10th Cir. 1996)). However, "[s]howing good cause is not a particularly demanding requirement." *Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK)*, 275 F.R.D. 544, 547 (D.N.M. 2011) (citations omitted). Typically, it requires "some showing of good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified." *Putnam v. Morris*, 833 F.2d 903, 905 (approvingly quoting *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1305 (5th Cir. 1985)). Ultimately, the determination of good cause is within the district court's sound discretion. *Utah Republican Party*, 678 F. App'x at 702 (reviewing district court's finding that there was no good cause under Fed. R. Civ. P. 6(b)(1) for abuse of discretion).

Here, the Court finds that good cause does not exist to set yet another deadline for Plaintiff to respond to the two Motions [#37, #39], which have been pending since November and December 2025. The Court also finds that Plaintiff has failed to demonstrate excusable neglect. The Court has given Plaintiff multiple opportunities to

participate in the litigation he filed and to respond to Defendant's Motions [#37, #39]. The Court, on its own, extended Plaintiff's response deadlines. The Court, on its own, ordered Defendant to re-mail the Motions to Plaintiff. Importantly, the Minute Order [#41] setting a new deadline for Plaintiff to respond to the Motions was issued on February 18, 2026, and was not returned as undeliverable. Another Minute Order [#44] issued on April 6, 2026, which again reset Plaintiff's deadline to respond to the Motions was not returned as undeliverable. The Court's July 26, 2026 Order to Show Cause [#45] was not returned as undeliverable. The Court set a very clear August 14, 2026 deadline for Plaintiff to show cause, and Plaintiff appears to have willfully chosen not to comply with the deadline, opting instead to file a "Motion to Show Cause" on August 17, 2026, which makes no mention of the Order to Show Cause, but nevertheless acknowledges that a lot of time has passed and Plaintiff has missed deadlines.

Plaintiff's explanation for the missed deadlines does not demonstrate diligence. While the Court sympathizes with Plaintiff over his father's passing, Plaintiff does not articulate when his father died or why Plaintiff was rendered entirely unable to file any motions for extension of time before deadlines expired. To the extent that Plaintiff relies on his writ to the Weld County Jail as an excuse, he fails to provide any additional information about the retrial, including the case number, in which court it occurred, and the specific dates of the retrial. Moreover, though a judge granted a motion for a new trial in a case against Plaintiff in Weld County on December 9, 2025, *People v. Hudson*, 24CV30720, the docket does not indicate that the trial ever occurred.[6] He also does not

[6] The Court may take judicial notice of this. *See Horton v. Davis*, No. 13-cv-01089-REB-NYW, 2015 WL 7294815, at *1 (D. Colo. Nov. 19, 2015) (stating, "[a] court may also take judicial notice of other courts' files and records . . . as facts 'capable of accurate and ready determination by

say that Buena Vista Correctional Facility was not forwarding mail to him while he was at Weld County Jail and, even if that was the case, Plaintiff knows he has an independent duty to keep his mailing address current with the Court. *See* D.C.COLO.LCivR 5.1(c); *see also Motion for Notice of Changed Address* [#23] (noting a change of address from Weld County Jail to Buena Vista Correctional Facility). To the extent Plaintiff claims that he has been unable to access the prison law library because of lockdowns, he does not articulate the dates, frequency, or duration of those lockdowns. He also does not articulate why those lockdowns rendered him entirely unable to file timely motions for extension of time.

Setting yet another deadline for Plaintiff to respond to the Motions would prejudice Defendant because it would further delay these proceedings and it would require further expenditure of resources. The Motions have been pending on the Court's docket for nearly nine months, and Plaintiff's Motion to Show Cause fails to articulate why he was not in reasonable control of the reasons for the delays. Therefore, the Court proceeds to address Defendant's Motion to Dismiss [#37] arguments without further briefing.

**2. Whether Plaintiff's Claims Warrant Dismissal**

Plaintiff styles Claims One and Three as violations of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. *Second Am. Compl.* [#14] at 4-6. These allegations arise from incidents that occurred while Plaintiff was a pretrial detainee at Weld County Jail. *See id*.

**a. Claim One: Sexual Harassment and Right to Privacy**

In support of Claim One, Plaintiff alleges that Defendant attempted to serve him a disciplinary report while he was taking a shower, improperly remained in the shower area,

---

resort to sources whose accuracy cannot reasonably be questioned.'") (quoting *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1219 n.2 (10th Cir. 2011)).

made sexualized comments about Plaintiff's genitalia, and exposed Plaintiff's nude body to whomever reviews Defendant's body camera footage. *Second Am. Compl.* [#14] at 4-6. Though Plaintiff does not expressly identify the nature of his claim, the Court liberally construes it as a 42 U.S.C. § 1983 claim for a right to be secure in his bodily integrity and, relatedly, a violation of his right to privacy.

The Fourteenth Amendment, applying an Eighth Amendment benchmark, protects a pretrial detainee's "constitutional right to be secure in [his] bodily integrity," which "includes the right to be free from sexual abuse" by prison guards. *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (quotation omitted); *see also Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (noting that the Fourteenth Amendment's Due Process Clause governs a pretrial detainee's claim, while "the Eighth Amendment standard provides the benchmark"). "The Eighth Amendment requires jail officials 'to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Craig*, 164 F.3d at 495 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)). "To hold a jailer personally liable for violating an inmate's right to humane conditions of confinement, a plaintiff must satisfy . . . an objective and subjective component." *Id*. (citing *Barney*, 143 F.3d at 1310).

Under the objective component, the alleged deprivation must be "sufficiently serious." *Id*. (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective inquiry focuses on the alleged deprivations' severity and their duration. *Id*. (citing *Barney*, 143 F.3d at 1311). Under the subjective component, the jail official must have a "sufficiently

culpable state of mind." *Id*. (quoting *Wilson*, 501 U.S. at 297). The jail official must know of and disregard an excessive risk to inmate health and safety. *Id*.

Defendant argues that his alleged conduct does not rise to a constitutional violation because he is a member of the same sex as Plaintiff, he "momentarily viewed [Plaintiff] a single time while showering," he had "the legitimate goal of" serving "a disciplinary notification to Plaintiff," and he made a single alleged comment about Plaintiff's genitalia. *Motion* [#37] at 5-6.

The Court finds that while Defendant's alleged conduct is unacceptable, it does not meet the objective component of an Eighth Amendment violation. Even where sexualized touching accompanied sexual remarks—which touching Plaintiff does not allege occurred—courts have found that the alleged conduct did not support an Eighth Amendment violation. *See Martin v. Creek Cnty. Jail*, No. 10-CV-0699-CVE-PJC, 2010 WL 4683852, at *3-4 (N.D. Okla. Nov. 12, 2010) (finding no viable claim arising from a jailer's use a radio antenna to touch the plaintiff's buttocks in a sexualized manner) (collecting cases); *see also Licerio v. McConell*, No. 20-cv-01420-WJM-STV, 2021 WL 11634535, at *7 (D. Colo. June 20, 2021) (collecting cases where "courts have found that minor, isolated incidents of inappropriate touching and occasional sexual remarks do not rise to the level of a constitutional violation"), *report and recommendation adopted*, 2021 WL 11634825 (D. Colo. Aug. 18, 2021).

To the extent Plaintiff brings this claim under the Fourth Amendment, Defendant argues that a right of privacy in the Fourth Amendment-sense is "fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Motion* [#37] at 5 (quoting *Hudson v.*

*Palmer*, 468 U.S. 517, 527-28 (1984)). While Defendant is correct, the Tenth Circuit has nevertheless recognized "a limited right to privacy in the context of prison life." *Williams v. Reed*, No. 18-3257-SAC, 2018 WL 4826219, at *3 (D. Kan. Oct. 4, 2018); *see also Cooper v. Belcher*, No. 08-cv-01599-CMA-KMT, 2010 WL 3359709, at *12 (D. Colo. Aug. 25, 2010) (noting that "prison inmates retain a Fourth Amendment privacy interest in the integrity of their own persons, which privacy interest extends to personal body searches of inmates."). Here, Plaintiff does not allege that Defendant searched him, but that Defendant remained in close proximity while Plaintiff showered. *Second Am. Compl.* [#14] at 4. To the extent Plaintiff's claim rests on Defendant's possession of a body-worn camera, Plaintiff's allegation is vague and he does not allege that Defendant had his body-worn camera turned on during the interaction, even if Defendant had the camera on his person. *See Second Am. Compl.* [#14] at 5 ("[Defendant] had exposed my nude body to the individuals whom [sic] have the ability to review the mandated Deputy worn body cameras."); *cf.* COLO. REV. STAT. § 24-31-902(1)(a)(II)(D) (requiring jail peace officers to activate body-worn cameras "when performing a task that requires an anticipated use of force, including cell extractions and restraint chairs."). While the Court must liberally construe Plaintiff's allegations and draw all reasonable inferences from well-pled allegations, it cannot supply facts that are not alleged. *See Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

Because Plaintiff fails to state a viable constitutional claim, Defendant is entitled to qualified immunity in connection with Claim One. Accordingly, the Court **recommends** that Claim One be **dismissed without prejudice**.

**b. Claim Three: Retaliation**

In support of Claim Three, Plaintiff alleges that, after Defendant responded to Plaintiff's Prison Rape Elimination Act grievance about the shower incident, Defendant accused Plaintiff of diverting his pills. *Second Am. Compl.* [#14] at 6. Defendant seeks dismissal of this claim, though he construes the claim as one based on due process. *See Motion* [#37] at 6. As the magistrate judge had done before, *see Order* [#12] at 5-6, the undersigned construes this claim as one for retaliation.

Claims based on alleged retaliation for reporting supposed PREA violations arise under the First Amendment. *See, e.g.*, *Quintano v. Aragon*, No. 24-cv-01883-NRN, 2025 WL 2676047, at *6 (D. Colo. Sept. 18, 2025); *see also Allen v. Avance*, 491 F. App'x 1, 5-6 (10th Cir. 2012) (discussing retaliation claim brought by pretrial detainee). As a magistrate judge previously explained, Plaintiff must plausibly allege that (1) he "was engaged in constitutionally protected activity", (2) Defendant's actions caused Plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity," and (3) Defendant's "adverse action was substantially motivated as a response to" Plaintiff's "exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

Here, Plaintiff has not sufficiently alleged that he suffered *any* injury due to Defendant's action alleged under Claim Three. Plaintiff merely alleges that Defendant "accused" him of "diversion" of pills and does not allege that he suffered any consequence whatsoever stemming from this accusation. *See, e.g.*, *Clark v. Creighton*, No. 23-cv-03099-PAB-SBP, 2026 WL 863854, at *10 n.10 (D. Colo. Mar. 30, 2026) (concluding that a plaintiff failed to state a retaliation claim because he had "not alleged that he sustained any injury at all, let alone one of constitutional magnitude, following the submission of his

PREA complaint."). Additionally, as in the First Amended Complaint [#11], Plaintiff has failed to sufficiently allege that Defendant's action was "substantially motivated" as a response to Plaintiff's PREA reporting. *See Order* [#12] at 6 (finding Plaintiff's "allegations concerning the adverse action(s) taken by [Defendant] in response to [Plaintiff's] grievance filing are vague and conclusory"); *see also Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) (noting that a plaintiff must "allege *specific* facts showing retaliation *because* of the exercise of the prisoner's constitutional rights.") (emphasis added, internal quotation marks omitted)). Therefore, Plaintiff has failed to state a viable retaliation claim against Defendant.

Because Plaintiff fails to state a viable retaliation claim, Defendant is entitled to qualified immunity in connection with Claim Three. Accordingly, the Court **recommends** that Claim Three be **dismissed without prejudice**.

**B. Failure to Prosecute**

Finally, the Court considers whether, in the alternative, this case should be dismissed for failure to prosecute.

Federal Rule of Civil Procedure 41(b) provides in relevant part: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subsection (b) . . . operates as an adjudication on the merits." Although Rule 41(b) expressly permits dismissal upon a defendant's motion, "the Rule has long been interpreted to permit courts to dismiss actions sua sponte for a plaintiff's failure to prosecute or comply with the rules of civil procedure or court's orders." *Olsen v. Mapes*, 333 F.3d 1199, 1204 n.3 (10th Cir. 2003) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)).

Typically, the Court is inclined to recommend dismissal without prejudice under circumstances such as these, where a plaintiff is arguably unable or unwilling to continue litigating his claims, because dismissal with prejudice "represents an extreme sanction appropriate only in cases of willful misconduct," and should be used "as a weapon of last, rather than first, resort." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992) (internal quotation marks omitted); *see Butler v. Butierres*, 227 F. App'x 719, 720 (10th Cir. 2007) (remanding on issue of dismissal with prejudice for determination of willfulness). In some circumstances, however, dismissal without prejudice effectively serves as a dismissal with prejudice due to the statute of limitations. *See, e.g.*, *Faircloth v. Hickenlooper*, 758 F. App'x 659, 661 (10th Cir. 2018) (assuming arguendo that timeliness issues meant that the district court's dismissal without prejudice "was the functional equivalent of a dismissal with prejudice" and that "[t]his assumption would require consideration of the *Ehrenhaus* factors").

In *Ehrenhaus*, the Tenth Circuit Court of Appeals identified five factors for the district court to consider before choosing dismissal as a sanction: "(1) the degree of actual prejudice to the defendant[s]; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Ehrenhaus*, 965 F.2d at 921 (internal citations omitted); *see also Gates Rubber Co. v. Bando Chem. Indus.*, 167 F.R.D. 90, 101 (D. Colo. 1996). "[D]ismissal is warranted when 'the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits.'" *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1144 (10th Cir. 2007) (quoting *Ehrenhaus*, 965 F.2d at

921). "Consideration of these factors is ordinarily unnecessary when the dismissal is without prejudice," but because this case was filed more than seventeen months ago, the Court considers the five *Ehrenhaus* factors in case refiling would be untimely. *Faircloth*, 758 F. App'x at 661; *Compl.* [#1] (filed March 17, 2025).

Regarding the first factor, i.e., the degree of actual prejudice to Defendant, the Court finds Defendant has been significantly prejudiced by Plaintiff's seeming failure to update his contact information, his lack of participation in this case, and his failure to comply with the Court's orders. Defendant has spent resources defending against Plaintiff's claims, including in the preparation and filing of a Motion to Dismiss [#37], and Plaintiff failed to respond. *See Teague v. Colorado*, No. 20-cv-01425-PAB-KMT, 2021 WL 326943, at *2 (D. Colo. Feb. 1, 2021) (evaluating *Ehrenhaus* factors and finding "prejudice to defendants, particularly given that they prepared and filed motions to dismiss . . . , to which the plaintiff did not respond"). Moreover, in responding to the Court's Order to Show Cause [#45], Plaintiff fails to argue that Defendant is not prejudiced to a great degree by his failure to prosecute this case. Accordingly, the Court finds this factor weighs in favor of dismissal.

Regarding the second factor, i.e., the amount of interference with the judicial process, this case has come to a complete halt, with a monthslong gap on the docket caused by Plaintiff failing to litigate his case. "The justice system is clogged as new cases arise while old cases are still on the dockets." *United States v. Lutcher*, No. 4:20-cr-00022-DN-DBP, 2020 WL 6434790, at *2 (D. Utah Nov. 2, 2020). Accordingly, the Court finds this factor weighs in favor of dismissal.

Regarding the third factor, i.e., the culpability of the litigant, there is no indication that anyone other than Plaintiff is responsible for the current state of his lawsuit. Despite the Court giving Plaintiff multiple additional chances to meet pending deadlines in this action, *see Minute Orders* [#41], [#44], *Order to Show Cause* [#45], Plaintiff clearly abandoned this case for some time. Moreover, Plaintiff's failure to respond is inexcusable, particularly because the Court, in the interest of caution, took action to make sure Defendant's Motion to Dismiss [#37] and Motion to Stay [#39] were sent, then re-sent to the precise address most recently provided by Plaintiff. *See Minute Orders* [#41, 44]. The Court further notes that this address matches the address provided by Plaintiff with his most recent filing. *See Pl.'s Motion* [#46] at 3. Plaintiff nevertheless failed to respond or take any other action for months, suggesting that Plaintiff either failed to update his contact information or simply failed to respond to subsequent mailings.

In responding to the Order to Show Cause [#45], as noted above, Plaintiff provides reasons for his lack of participation in this case. *Pl.'s Motion* [#46] at 1-2. Even assuming that all this is the case, Plaintiff has provided insufficient explanation for why he has allowed nine months to elapse since the Motion to Dismiss [#37] was filed without providing any response or requesting any extension of time. Notably, Plaintiff does not assert that he failed to receive the Court's Minute Orders [#41, 44] from February 18, 2026, and April 6, 2026, providing Plaintiff with specific dates by which he needed to respond to the Motion to Dismiss [#37] and the Motion to Stay [#39], yet he nonetheless failed to request an extension, request that those motions be re-mailed to him, or otherwise respond in any form until August 24, 2026. Plaintiff's alleged writ to the Weld County Jail from early April to early May would, at most, have excused a month of delay.

Plaintiff does not allege that the lockdown at his facility lasted for a period of months rather than mere days or weeks. Moreover, even if the lockdown lasted for several months and if the Court forgave Plaintiff an equivalent amount of delay, Plaintiff's response to the motions would still be untimely. *Cf. Pirela v. Carver*, No. 2:08-cv-651 TS, 2009 WL 2830997, at *1 (D. Utah Aug. 28, 2009) (rejecting lockdowns as a basis for equitable tolling where a habeas petitioner did not specify any lockdown dates or exactly how they thwarted timely filings). And finally, Plaintiff does not explain why his father's passing made him unable to respond to the motions for over nine months. Accordingly, the Court finds the third factor weighs in favor of dismissal.

Regarding the fourth factor, i.e., whether the Court warned Plaintiff that dismissal of the action would be a likely sanction, the Court attempted to warn Plaintiff through its Order to Show Cause [#45]. Although Plaintiff responded to the Order to Show Cause [#45], as already discussed, his response does not demonstrate good cause or excusable neglect. Although Plaintiff is proceeding pro se, he is required to read and follow the rules and orders of the Court. *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992). Accordingly, on balance, the Court finds this factor is neutral.

Regarding the fifth and final factor, i.e., the efficacy of lesser sanctions, the Court concludes that no sanction less than dismissal would be effective. Nothing in the record before the Court, other than the threadbare excuses provided in Plaintiff's Notice [#46], suggests that, if given more time or more chances, Plaintiff would take up his burden to prosecute this case. Further, the Court finds that a monetary sanction would be ineffective because it bears no relationship to the issue at the heart of this Recommendation. Under

these circumstances, no lesser sanction is warranted, and dismissal is the appropriate sanction. Accordingly, the Court finds this factor weighs in favor of dismissal.

Having weighed all five *Ehrenhaus* factors, the Court **orders** that its Order to Show Cause [#45] is **made absolute** and further recommends finding that **dismissal without prejudice** under Federal Rule of Civil Procedure 41(b) for failure to prosecute is appropriate, as an alternative to the undersigned's recommendation to dismiss for failure to state a claim. Additionally, the Court **orders** that the Motion to Stay [#39] is **denied as moot**.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion to Dismiss [#37] be **GRANTED**.

IT IS FURTHER **RECOMMENDED**, in the alternative, that Plaintiff's claims be **DISMISSED WITHOUT PREJUDICE** pursuant to Federal Rule of Civil Procedure 41(b) and D.C.COLO.LCivR 41.1.

IT IS FURTHER **ORDERED** that the Order to Show Cause [#45] is **MADE ABSOLUTE**.

IT IS FURTHER **ORDERED** that the Motion to Stay [#39] is **DENIED as moot**.

IT IS FURTHER **ORDERED** that Plaintiff may file an objection **within 14 days** of service of this Recommendation. In relevant part, Federal Rule of Civil Procedure 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review

by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: August 27, 2026

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge